**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 23-cr-289 (ABJ)** |
| | : | |
| **MATTHEW LOGANBILL,** | : | |
| | : | |
| **Also Known As "Matt Loganbill"** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' TRIAL BRIEF**

The United States, by and through its attorneys, respectfully submits this brief summarizing the government's evidence at trial and the various legal issues likely to come before the Court.

**I.   THE DEFENDANT'S STATEMENTS AND ACTIONS**

**A.  THE DEFENDANT'S STATEMENTS BEFORE JANUARY 6**

Between November 4, 2020 and January 5, 2021, the defendant became increasingly frustrated with the outcome of the 2020 presidential election. As a result, he wrote hundreds of posts, comments, and messages on Facebook regarding his knowledge of the legal process for certifying the election, his belief that the election was being stolen, and his support of even violent efforts to stop it.[1]

The government will highlight only the most egregious messages that will be presented in trial. However, the full range of messages, and their sheer quantity, are relevant to illustrate the

---

[1] All messages, unless stated otherwise, are from the defendant's Facebook return which was obtained through legal process. The government and defense have stipulated that the defendant's cell phone evidence (301 series), his Facebook records (302 series), and digital media extracted from his other digital devices (303 series) are in fact the defendant's. (Stipulation: Gov Ex 704).

degree to which he followed the legal process, how it consumed him, and how he wanted to stop what he claimed was a stolen election.[2]

1. *The defendant understood the legal process for certifying the Electoral College vote:*

- On December 20, 2020, the defendant wrote, "This would take place Jan 6 Witnesses should be 60 feet away while Pence counts the Electoral College votes." (Gov Ex 302.47)

- On December 30, 2020, the defendant wrote, "CALL SENATOR JOSH HAWLEY'S OFFICE T O D A Y AND LET HIM KNOW YOU SUPPORT HIS INTENT TO BE THE FIRST REPUBLICAN SENATOR TO CHALLENGE THE ELECTORAL VOTE ON JANUARY 6." (Gov Ex 302.49)

2. *The defendant believed the election was stolen:*

- On November 5, 2020, the defendant wrote, "in ALL SIX [states] Trump was winning by a large margin . . . I hope he has/had a plan to catch these traitors." (Gov Ex 302.15)

- On December 12, 2020, the defendant wrote, "if they toss [the election lawsuits], the USA will cease to exist . . . If the SCOTUS rules that states don't have to follow their own Constitution, the USA is done as we know it." (Gov Ex 302.39e)

- On December 13, 2020, the defendant wrote, "You have just witnessed a coup, the overthrow of the US free election system, the end of our constitutional republic, and the merge of capitalism into the slide toward socialism . . . On your watch, America died." (Gov Ex 302.41)

---

[2] The defendant's statements as included here have been cleaned up and shortened, while maintaining their context.

3.  *The defendant supported even violent efforts to stop the stolen election:*

- On November 9, 2020, the defendant wrote, ". . . I am 100% ready . . . I will not go quietly into the night -then again I can." (Gov Ex 302.21)

- On November 13, 2020, the defendant posted a video of a man on a horse with a banner waiving:



  (still frame from Gov Ex 302.29). In the post, the defendant wrote, "You still think Democrats want unity ? ?" The defendant then replied to a comment, "Unfortunately with the attitude and postering of the left, I don't see any other outcome. God can always change people, but I, and my family will not be modern day 'jews'" (Gov Ex 302.28)

- On November 30, 2020, the defendant wrote, "Anything close to that will not happen in the USA, while I'm still alive, even if I am the only one. I will fight with sticks and rocks if I run out of ammo." (Gov Ex 302.35)

- On December 2, 2020, the defendant wrote, "I'm going to riot and burn some stuff down – just as soon as I get caught up with work." (Gov Ex 302.37)

- On December 12, 2020, the defendant wrote, "I hoped and prayed it wouldn't come to this, I am at peace with what comes next." (Gov Ex 302.39c). He also wrote, "I WILL

NOT, die peacefully and hand my grandchildren a communist country, they will, at least, know I gave my all." (Gov Ex 302.39d)

- On December 18, 2020, the defendant wrote, "Those people need to hang." (Gov Ex 302.45)

- On December 19, 2020, the defendant wrote, "They haven't seen a riot, till our side gets started." (Gov Ex 302.46)

- On January 5, 2021, the defendant wrote, "All most [to D.C.], to stand beside [President Trump], behind him, or in front of him. We are here to do our part to save this nation." (Gov Ex 302.56)

**B.  THE DEFENDANT STATEMENTS AND ACTIONS ON JANUARY 6, 2021**

On or about January 5, 2021, the defendant traveled to Washington, D.C. with two of his friends, Witness-1 and Witness-2. According to the defendant's own words, he met up with "a small group, of business men, military, retired military, law enforcement, private military contractors, and MP's" from the Midwest. (Gov Ex 303).[3] On January 6, 2021, the defendant attempted to attend a rally by then President Donald Trump, but he was unable to get in. (Gov Ex 303).

At 1:20 p.m., the defendant sent a text message, writing, "Are you watching what's going on in the house/ elector certification." (Gov Ex 301.11). At or around this time, the defendant "ran into Alex Jones" and marched with him and his supporters to the Capitol. (Gov Ex 303).

---

[3] This is a word document discussing the defendant's trip to Washington, D.C. found on his computer after a search warrant was executed at his residence. (Gov Ex 303).



*(Gov Ex 201.2)*[4]

Near the Capitol, the defendant stopped to listen to Alex Jones and recorded a video of Mr. Jones' speech. Mr. Jones states, in part, "The American Sleeping Giant is awake . . . we are so blessed that President Trump was standing against this fraud defiantly, the New World Order is on the ropes, that is why they're having to steal these elections in front of everybody . . . 1776 against the New World Order." (Gov Ex 302.60).

### *On Capitol Grounds*

On January 6, 2021, thousands of people descended on the U.S. Capitol building and grounds as a joint session of Congress had convened to certify the votes of the Electoral College for the 2020 Presidential Election. Vice President Michael Pence, as the President of the Senate, was there to preside over the joint session and, later, the Senate proceedings. On that day, physical barriers surrounded the U.S. Capitol building and grounds. At all relevant times, the United States

---

[4] The government and defendant have stipulated that the circled person is the defendant. (Gov Ex 703).

Capitol building and its grounds—including the Upper West Terrace Doors, the Rotunda, and the entire Capitol building itself—were closed to members of the public.

The defendant was among the group of rioters who illegally entered the U.S. Capitol grounds, and then the Capitol building, that day. The defendant came dressed for battle, wearing a helmet, gas mask, radio, backpack, and carrying an American flag affixed to a pole.

Between 1:13 p.m. and 1:57 p.m., the defendant entered Capitol grounds. As he approached the Capitol building, he "heard tear gas being shot into the crowd" and "LEO's were mostly all in riot gear and standing in a line . . . all behind the 3' high crowd control fences." (Gov Ex 303). After using the restroom, "it was getting dangerous just to keep [his] footing and not get knocked down and trampled." (Gov Ex 303). The defendant then "moved behind a shipping container for cover and to put [his gas] mask on." (Gov Ex 303).



*(Gov Ex 201.3)*[5]

The defendant and the mob then "pushed forward and broke the line into the Capitol." (Gov Ex 302.60). Specifically, the defendant "crawled under the scaffolding [and] up those stairs,"

---

[5] This photograph was taken inside the Capitol, near the Old Senate Chamber. The government and defendant have stipulated that the circled person is the defendant. (Gov Ex 703).

taking him from the Lower West Terrace of the Capitol to the Upper West Terrace Doors. (Gov Ex 302.64). At 2:42 p.m., the defendant moved to the front of the mob where he encountered a line of police officers. During this time a loud and high-pitched fire alarm rang out due to the Upper West Terrace Doors being opened. The fire alarm would continue for the duration of the defendant's time in this area. The defendant would later describe the mob's interaction with the police officers at the Upper West Terrace Doors, writing, "[t]here was some verbal confrontations, such as – 'Why are you protecting these Traitors.'" (Gov Ex 303).



*(Gov Ex 101.1)[6]*

Special Agent David Millard, USCP, circled in yellow above, was just a few feet from the defendant as he told the mob they were not allowed into the Capitol. At 2:44 p.m., recognizing that they were dangerously outnumbered and sandwiched between the mob at the door and rioters who had already breached the Capitol, the officers guarding the Upper West Terrace Doors retreated, and the mob, including the defendant, proceeded into the Capitol.

The defendant proceeded up a flight of stairs and into the Rotunda. Once past the police officers he confronted, he removed his gas mask and moved North, towards the Senate where the

---

[6] The government and defendant have stipulated that the person circled in red is the defendant. (Gov Ex 703)

Vice President would have would have been presiding if the rioters had not broken into the Capitol. The defendant (circled in yellow below) entered an archway on the North side of the Rotunda, which opened onto a hallway with the Senate Chamber at the far end. Seeing rioters retreating from the hallway, and appearing to suffer the effects of "OC" spray (more commonly referred to as pepper spray), he moved back into the Rotunda and put his gas mask back on, ready for his next confrontation with police officers. Later that day, the defendant would recount this on Facebook; he wrote, "Inside the Capitol was confrontational . . . they sprayed us down several times." (Gov Ex 302.60).


*(Gov Ex 103.4 at 2:50 p.m)*


*(Gov Ex 103.4 at 2:51 p.m)*

The defendant then proceeded north towards the Senate. Outside of the Old Senate Chamber the defendant encountered another line of police officers, including the same officer the mob had confronted at the Upper West Terrace Doors, Special Agent Millard. In Government Exhibit 102.1, body worn camera from another police officer, Agent Millard can be heard telling the mob, including the defendant just feet away, to get out so they can reestablish order and the legal process.



*(Gov Ex 102.1 at 3:02 p.m.)*

At 3:03 p.m., the mob at the Old Senate Chamber began to move back towards the Rotunda and the defendant was one of the last rioters to leave the area outside of the Old Senate Chamber. Again, after the confrontation with the police officers is over, the defendant removed his gas mask. At 3:04 p.m. the defendant reentered the Rotunda and proceeded west, where a line of police officers had begun to form. At 3:06 p.m., this defendant (circled in red below) encountered the line of police officers and was told to leave. He responded, "Where we going" and pointed to the North side door. He continued, "Where we going, they won't let us go that way." The defendant was then touched by the officer and guided away from the police line.



*(Gov Ex 102.6 at 3:05 p.m)*

The defendant (circled in yellow below) then walked away from the police line towards the North side of the Rotunda, but he did not leave the Capitol. He turned and looked toward the line of police officers. During this time the mob had become increasingly violent with the line of police officers. Rioters were pushing, shoving, hitting, and attacking the police officers. At about 3:09 p.m., the defendant took a video of this on his cell phone, which he later uploaded to Facebook. (Gov Ex's 302.79b, 302.81).



*(Gov Ex 103.6 at 3:07 p.m.)*

The defendant remained in the center of the mass of rioters as the police line pushed them out of the Capitol through the East Foyer. At 3:16 p.m., the defendant (circled in red below) exited the Capitol but remained on Capitol grounds, smiling among the crowd.




*(Gov Ex 201.4)*                                          *(Gov Ex 201.5)*

After leaving the Capitol, the defendant sent text messages and wrote on Facebook discussing his day and his intentions moving forward:

- At 3:33 p.m., the defendant wrote a text message: "We were maybe 75-100 feet from the Capitol steps, from what we could see nothing was happening, after they fired about 10 canisters into the crowd, we took the capital. Still peaceful, but just pushed through the line." (Gov Ex 301.18). One minute later, the defendant wrote, "They gassed us inside as well." (Gov Ex 301.19)

- At 4:48 p.m., the defendant sent a text message; he wrote, "Like I told the cop inside the Capitol – we came peacefully this time, next time we won't . . . ." (Gov Ex 301.16).

Later that same day, he would clarify his definition of "peacefully" on Facebook, writing, "Shoving is not violence . . . ." (Gov Ex 302.75)

- At approximately 5:04 p.m. EST, the defendant wrote, "Everything was fine all the way to the Capitol, we were near the front, I didn't see any push against the police line until after 8-10 tear gas canisters were fired into the crowd. Then we pushed forward and broke the line into the Capitol. Inside the Capitol was confrontational, but no Patriots hit any police that I was , they sprayed us down several times." (Gov Ex 302.60)

- At 5:50 p.m., the defendant wrote a text message: "We are heading out, most everything is over, hope we sent a message, hope they got the message." (Gov Ex 301.22)

- At 9:05 and 9:09 p.m., the defendant wrote two text messages: "it, may not get any easier in the days to come" and "It's in Gods hands (always has been) but I will not sit idly by, and leave our grandchildren a communist country." (Gov Ex 301.14)

- At 9:30 p.m., the defendant wrote on Facebook, "'It's like I told one of the cops that seemed in charge of the police line. You see what we did today 'peacefully' it won't be that way when we return . . . .'" (Gov Ex 302.73)

### C.  THE DEFENDANT'S STATEMENTS AFTER JANUARY 6, 2021

After January 6, 2021, the defendant further explained his intent and observations from the day in question:

*1.  The defendant observed violence at the Capitol on January 6*

- On January 7, 2021, the defendant wrote, "Yes, from what I could see the 6-10 canisters lobbed into the crowd was what set it off." (Gov Ex 302.70)

- On January 8, 2021, the defendant wrote, "the LEO did not stop us from going in the building, there was a face off for about 10 minutes – of JUST yelling back and forth, then the guy who seemed in charge, came by and said something to the group, and they stepped back and let us in, same thing at the next fall back point, same guy, same result. The only place they wouldn't give was the hallway towards the Rep. chamber." (Gov Ex 302.82)

   2. *The defendant intended to stop the certification*

- On January 7, 2021, the defendant wrote, "we were trying every means possible to stop these idiots from stealing the presidency and destroying this nation." (Gov Ex 302.65). Later he added, "They didn't [let us in] at the chamber, we could have over run them, after 10-15 minutes of back and forth, we walked out." (Gov Ex 302.66)

- On January 7, 2021, the defendant wrote, "the rest were [at the Capitol] to show that 'we' could take what we wanted peacefully. And we did, afterwards we also walked out peacefully. Some cops just a bit belligerent and they got less cooperation . . . ." (Gov Ex 302.69)

- On January 7, 2021, the defendant wrote, "I told one of the commanding officers, you saw what we accomplished without violence, if/when we come back it will not be this peaceful . . . ." (Gov Ex 302.71)

- On January 7, 2021, the defendant wrote, "They saw how easy we took the Capitol – unarmed, and peacefully, next time. . . ." (Gov Ex 302.68)

   3. *The defendant prepared for further lawlessness and violence.*

- On January 7, 2021, the defendant wrote, "I agree when the SCOTUS, refused to hear the states cases, the USA died." (Gov Ex 302.67)

- On January 7, 2021, the defendant wrote, "when there are 2, maybe 3, 'levels' of who the law apply's to . . . Yes, yes, [the laws] no longer matter." (Gov Ex 302.78)

- On January 8, 2021, the S.C. wrote, "Things are getting very real." The defendant replied, Oh, yes, this only motivated our group to be more prepared." (Gov Ex 302.83)

- On January 8, 2021, J. L. wrote, "Is he doing insurrection act now?" The defendant replied, "No . . . I think he's done, the pollical fight is over, there's only one thing left." (Gov Ex 302.84)

- On January 15, 2021, the defendant wrote, "AR's don't last long. Had a 'civil unrest' package available this morning. Rifle, optic, irons at 45*, sling, 4 mags, 120 rounds of ammo." (Gov Ex 302.85)

## II.    THE ELEMENTS AND THE GOVERNMENT'S PROOF

The defendant is charged with violating 18 U.S.C §§ 1512(c)(2), 2, 1752(a)(1) and 1752(a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and 5014(e)(2)(G). The elements below have been proposed by the Court and the government has no objection to such elements. The evidence will establish, beyond a reasonable doubt, the elements as listed:

<u>Count One: Obstruction of an Official Proceeding and Aiding and Abetting,</u>
<u>18 U.S.C. §§ 1512(c)(2) and 2</u>

*1. First, the defendant attempted to, or did obstruct or impede an official proceeding;*

The parties have stipulated that on January 6, 2021, a Joint Session of the United States Congress convened at the Capitol at noon. (Gov Ex 701). The parties have also stipulated that the Joint Session was suspended, and the Vice President and members of Congress were evacuated from the House and Senate Chambers. (Gov Ex 701). The instructions define an "official proceeding" to mean Congress's Joint Session to certify the Electoral College vote.

The government will call U.S. Capitol Police Captain Jessica Baboulis, who will testify that the certification of the Electoral College vote was halted because a mob entered the Capitol, and that the proceeding could not resume until the building was fully secured. The defendant was a part of that mob and inside the Capitol from 2:44 p.m. until 3:16 p.m. His presence, along with the other rioters, obstructed the official proceeding.

2.   *Second, the defendant intended to obstruct or impede the official proceeding;*

As outlined above, in the months ahead of his actions on January 6, 2021, and in the days following, the defendant wrote many statements on Facebook framing the 2020 presidential election as a national crisis and indicating that he was preparing for riots or war. (Gov Ex's 302.21, .28, .29, .37, .39d, .39e, .41, .45, .46, .61, .67, .85). The defendant believed the election was being stolen. (Gov Ex's 302.20, .24, .25, .30, .36, .40, .42, .48). Moreover, the defendant clearly understood how Congress would certify the Electoral College vote, and when it would occur – January 6, 2021. (Gov Ex's 301.11, 302.47, .49).  In fact, just ninety minutes before the defendant entered the Capitol, he asked someone over text message, "Are you watching what's going on in the house/ elector certification." (Gov Ex 301.11).

The defendant then entered the Capitol at the exact day and time he knew Congress was meeting to certify the Electoral College vote, dressed for battle. Just hours after he entered the Capitol, the defendant affirmed his intent in doing so; he wrote, "hope we sent a message, hope they got the message." (Gov Ex 301.22). The following day, the defendant again affirmed his intentions via Facebook: "why do you think we were trying every means possible to stop these idiots from stealing the presidency and destroying this nation." (Gov Ex 302.65).

3. *Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and*

The proof for this element goes hand-in-hand with the element discussed above. Knowing the Vice President and Congress were meeting to certify the Electoral College vote on January 6, 2021 (Gov Ex's 301.11, 302.47, .49), a vote he believed was stolen (Gov Ex's 302.20, .24, .25, .30, .36, .40, .42, .48), he nonetheless went into the Capitol on the day and time of the certification, anticipating violence.

Even before entering the Capitol, the defendant understood that his presence was not allowed – he witnessed barricades, police officers dressed in riot gear, and the use of tear gas to try and disperse the crowd. (Gov Ex 303). Each time he came upon a line of police officers he put his gas mask on and prepared for battle. His actions speak volumes as well. He joined the mob and "broke the line" of officers.

Inside the Capitol, the defendant could plainly see that it was overrun with members of this mob (Gov Ex 103. 3, .4, .5, .6), but nevertheless took part in "confrontation[s]" where the police officers "sprayed [them] down" (Gov Ex 302.60) and expressly told them to leave (Gov Ex 102.1, .6). He remained inside for over 30 minutes.

The defendant's statements afterwards show his acute awareness of the obstruction he was causing by being there: On January 7, 2021, he wrote, "I told one of the commanding officers, you saw what we accomplished without violence, if/when we come back it will not be this peaceful." (Gov Ex 302.71). Hours after leaving the Capitol, the defendant wrote that he hoped "we sent a message" and he "hope[d] they got the message." (Gov Ex 301.22).

The evidence establishes that he fully understood the impact he, along with the members of the larger mob, had upon Congress and the certification proceeding.

*4. Fourth, the defendant acted corruptly.*

"[T]o act 'corruptly,' the defendant must use unlawful means or have a wrongful or an unlawful purpose, or both. The defendant must act with "consciousness of wrongdoing," which means with an understanding or awareness that what the person is doing is wrong or unlawful."

The government is only required to prove the defendant had either an unlawful means or a wrongful or unlawful purpose. The defendant had both.

First, to accomplish his goal of obstructing the official proceeding, the defendant utilized unlawful means. His presence on Capitol grounds and inside the Capitol building were unlawful. As discussed above and below, the defendant broke through multiple police barriers and lines of police officers, entered doors through blaring alarms, and disregarded tear gas and pepper spray deployed by police officers. On at least three separate occasions, he was either told directly or was within feet of officers who told the mob they were not permitted inside the Capitol. He ignored their commands and instead threatened that he and the mob would make a more violent return.

Second, the defendant sought to obstruct the official proceeding with a wrongful or unlawful purpose. The defendant's purpose was to prevent the transfer of power to then President Elect Joe Biden and obtain the benefit of his preferred candidate to remain in office. The defendant believed the election was stolen (Gov Ex's 302.20, .24, .25, .30, .36, .40, .42, .48) and sought to use "every means possible to stop these idiots from stealing the presidency." (Gov Ex 302.65). Stopping the legal process of certifying the Electoral College vote and forcing Congress and the Vice President to evacuate is both wrong and unlawful, and the evidence will establish that the defendant did not (nor could he) believe that his actions were lawful. Rather, he appreciated and understood that his act of disobedience was the essence of the mob's and his purpose – to stop what could not be stopped by lawful means.

The defendant further acted with an understanding or awareness that what he was doing was wrong or unlawful. He observed myriad signs that he was not lawfully permitted on Capitol Grounds or in the Capitol – barricades, tear gas, police lines, pepper spray, and of course, he was told directly by officers that he had to leave so that Congress's business could continue. But he remained. He did so knowing it was unlawful to do so and he did so to obstruct Congress's official proceeding.

His words also confirm his awareness of these unlawful means. When recounting his time in the Capitol, he states he and the mob "broke the line into the Capitol" (Gov Ex 302.60) and "took the Capitol" (Gov Ex 302.68). He stated he was "there to show that 'we' could take what we wanted peacefully. And we did." (Gov Ex 302.69). (And as noted above, the defendant's definition of violence did not include the shoving of police officers. (Gov Ex 302.75)).

<u>Count Two: Entering or Remaining in a Restricted Building or Grounds</u>
<u>18 U.S.C. §§ 1752(a)(1)]</u>

1. *First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so.*

The parties have stipulated that the Vice President was visiting Congress for the Joint Session and that the grounds were restricted. (Gov Ex 701). Captain Baboulis will testify that the grounds were closed to the public.

The defendant had clear opportunities to observe that he was not permitted inside the Capitol. He saw the police deploy tear gas and pepper spray, broke through barriers, including police lines, encountered lines of police officers who told him directly he was not allowed to be present and had to leave, and he remained anyway.

2. *Second, that the defendant did so knowingly.*

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the

defendant knowingly entered or remained in a restricted building, one may consider all of the evidence, including what the defendant did or said.

As discussed above, the defendant was told to leave both explicitly by police officers, and indirectly through physical and makeshift barriers, obvious warnings, and the presence of violence.

<u>Count Three: Disorderly or Disruptive Conduct in a Restricted Building or Grounds</u>
<u>18 U.S.C. §§ 1752(a)(2)</u>

1. *The defendant engaged in disorderly or disruptive conduct in any restricted building or grounds.*

The defendant was present inside the Capitol building during the time the certification of the Electoral College vote would be taking place. Captain Baboulis will testify that the presence of rioters inside the building would prevent Congress from resuming their official proceeding. Preventing Congress from resuming their official proceeding is disruptive conduct.

Here, the defendant knowingly joined a mob bent on disruption, and did so on purpose, and not by mistake or accident.

2. *The defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.*

The defendant was present inside the Capitol building at the exact day and time of the certification of the Electoral College vote, a process he intimately understood. (Gov Ex's 301.11, 302.47 and .49). As he explained on January 7, 2021, "why do you think we were trying every means possible to stop these idiots from stealing the presidency and destroying this nation." (Gov Ex 302.65). He also understood that his presence interfered with the law enforcement officers on duty to protect the U.S. Congress during its business.

3.  *The defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.*

The defendant's conduct and its disruptive effects on the orderly conduct of Government business or official functions are discussed above, in detail.

Count Four: Disorderly Conduct in a Capitol Building
40 U.S.C. § 5104(e)(2)(D)

1.  *That the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings.*

2.  *That the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.*

3.  *That the defendant acted willfully and knowingly.*

The defendant's willful and knowing conduct in the Capitol and his intent to impede, disrupt, or disturb the orderly session of Congress are discussed above.

Count Five: Parading, Demonstrating, or Picketing in a Capitol Building
40 U.S.C. § 5104(e)(2)(G)

1.  *First, that the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.*

2.  *Second, that the defendant acted willfully and knowingly.*

Government Exhibits 103.1 through 103.8 show the defendant parading, picketing, and demonstrating in and around the Capitol.

## III.   CONCLUSION

After the November 3, 2020, presidential election, the defendant became increasingly frustrated as his preferred candidate, then President Trump, unsuccessfully challenged the election results. The defendant followed the legal battles, posted on Facebook about the election being stolen via fraud, and disseminated information about Congress meeting on January 6, 2021 to certify the Electoral College vote. He acted on his frustration on January 6, 2021, when he entered Capitol grounds with a gas mask, helmet, radio, and American flag, knowing Congress was

meeting to certify the Electoral College vote. He joined a mob, and despite police attempts to deter that mob with cannisters of tear gas, "pushed forward and broke the line" of officers guarding the Capitol. Inside he confronted police, threatened police officers, and repeatedly refused to leave. He and the mob "took the Capitol," and tried "every means possible to stop these idiots from stealing the presidency." He had wanted to "send a message." And he did.

The defendant intended to and did corruptly obstruct the certification of Electoral College vote.

Respectfully Submitted,
MATTHEW M. GRAVES
United States Attorney

By:       /s/
Brian D. Brady
D.C. Bar Number 1674360
Trial Attorney
U.S. Department of Justice, Crim. Div.
Detailed to the D.C. U.S. Attorney's Office
601 D St. NW
Washington, D.C. 20530
BBrady@usa.doj.gov
(202) 834-1916

/s/ Alexander Diamond
Alexander M. Diamond
NY Bar No. 5684634
Assistant United States Attorney
District of Columbia
601 D St. NW
Washington, DC 20530
(202) 506-0427
Alexander.Diamond@usdoj.gov