UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 23-CR-289 (ABJ) |
| v. | : | |
| | : | |
| MATT LOGANBILL | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OMNIBUS RESPONSE TO THE COURT'S JULY 1, 2024
MINUTE ORDER AND THE DEFENSE'S AUGUST 8, 2024 MOTION**

The United States, through undersigned counsel, files this motion to apprise the Court of its view of the impact of *United States v. Fischer*, 144 S. Ct. 2176 (2024), on Count One of the Superseding Indictment, which charges the defendant with a violation of 18 U.S.C. §§ 1512(c)(2) and 2, and to address the defendant's motion to reconsider findings of guilt on Counts One, Two and Three. As discussed below, the Supreme Court's ruling in *Fischer* does not mandate the Court *reverse* its findings of guilt in this case.

To be sure, the Supreme Court's holding in *Fischer v. United States* renders the elements that the Court considered at trial in this case incorrect. 144 S. Ct. 2176 (2024). This amounts to reversible trial error, which warrants vacating the defendant's conviction on Count One. *See United States v. Reynoso*, 38 F.4th 1083, 1090–91 (D.C. Cir. 2022). The defendant's request that this Court reconsider the evidence and render a judgment of acquittal, however, is foreclosed by both principles of procedural regularity and D.C. Circuit precedent holding that "a defendant cannot make out a sufficiency challenge as to offense elements that the government had no requirement to prove at trial under then-prevailing law." *Id.* at 1091 (explaining that any error in those circumstances "is 'properly understood as a claim of trial error' in failing to instruct the jury on the omitted element"). As explained below, the only remedy available to the defendant at this

juncture is that the Court vacate his conviction on Count One and set the case for retrial on this count.

With respect to Counts Two and Three, the defendant has not identified any legal error with the defendant's convictions – unlike with 18 U.S.C. § 1512(c)(2), there has been no change in the law governing 18 U.S.C. § 1752(a) that would support vacatur.

I. **Procedural History**

On August 24, 2023, a grand jury returned an indictment charging the defendant with violations of 18 U.S.C. §§ 1512(c)(2) and 2 (Count One), 18 U.S.C. § 1752(a)(1) (Count Two), 18 U.S.C. § 1752(a)(2) (Count Three), and 40 U.S.C. § 5104(e)(2)(D) & (G) (Counts Four and Five, respectively). On November 16, 2023, following a three-day bench trial, this Court found Mr. Loganbill guilty of all counts. The Court then postponed sentencing to await the Supreme Court's decision in *Fischer*, released on June 28, 2024. On July 1, 2024, the Court issued a Minute Order requesting the government's position on how *Fischer* affects the case, "including whether the government introduced evidence at trial to establish that the defendant impaired the availability or integrity of records, documents, objects, or other things, such as witness testimony or intangible information, for us in an official proceeding, or attempted to do so." On August 8, 2024, the defendant additionally filed a motion to reconsider finding of guilt on Count One, as well as Counts Two and Three (ECF No. 42).

II. **Legal Analysis**

a. **The Motion to Reconsider the Guilty Verdict is Procedurally Improper**

Before turning to the merits, the defendant's Motion is predicated upon the Court's authority to reconsider the evidence in light of a change of the law. According to the defendant, the Court can do so as part of its inherent authority. *Id.* (citing *United States v. DaSilva*, 21-cr-564,

2024 WL 519909 (D.D.C. Feb. 8, 2024)). In doing so, his motion is not based on or governed by Rule 29 or any specific Federal Rule. The government respectfully disagrees with *DaSilva*'s outcome and the underlying analysis of this inherent authority.

The Supreme Court has previously considered a trial court's authority to reconsider past acquittals. For example, in 2005, the Supreme Court considered a trial court's reconsideration of a mid-trial acquittal. *Smith v. Massachusetts*, 543 U.S. 462 (2005). That acquittal, the Court held, was a final ruling, not subject to revision, "unless the availability of reconsideration has been plainly established by pre-existing rule or case authority expressly applicable to midtrial rulings on the sufficiency of the evidence." *Id.* at 473.

Likewise, the Supreme Court has considered cases in which a trial court attempts to revisit a jury's finding of guilt. In *Carlisle v. United States*, 517 U.S. 416 (1996), the Supreme Court rejected the trial court's grant of an untimely motion for a judgment of acquittal. In that case, the defendant moved for a judgment of acquittal one day later than the rules permitted, and the trial judge initially denied the motion both on the merits and as untimely. *Id.* at 418. At sentencing, the trial court reversed course and entered a judgment of acquittal. *Id.* The Supreme Court held this was improper. *Id.* at 433. In so ruling, the Court rejected the defendant's arguments that Federal Rule of Criminal Procedure 2 "vests the court with the supervisory power to enter judgment of acquittal" and that the trial court's "inherent supervisory power" provided such authority. *See id.* at 420–28. The Court explained: "Whatever the scope of this 'inherent power,' . . . it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Id.* at 426. Relevant here, the government is unaware of any Federal Rule of Criminal

Procedure that would allow a district court to reopen a guilty verdict entered at the conclusion of a bench trial 266 days after the verdict.[1]

The government has endeavored to identify cases in which a trial court vacated or reconsidered its own bench verdict following a contested or stipulated trial. Beyond *United States v. DaSilva*, No. 21-cr-564 (CJN), 2024 WL 519909 (D.D.C. Feb. 8, 2024), there appears to exist scant authority indicating that this procedure is permissible. Indeed, some state appellate courts have expressly prohibited such a procedure.[2] In fact, the government was not able to find *any* federal cases supporting the proposition that a trial court has the authority to reconsider a guilty verdict out of time, other than two district court cases: *DaSilva* and *United States v. Mendoza*, 390 F. Supp. 2d 925 (N.D. Cal. 2005).

In *Mendoza*, the district court "reconsidered its guilty verdict, vacated its finding of guilty, and dismissed the indictment" in an illegal re-entry case based on an intervening change in circuit law between the original verdict and the dismissal. 390 F. Supp. 2d at 928. But the government appealed such dismissal. In ruling, the Ninth Circuit did not directly address the propriety of the district court's reconsideration, because the Ninth Circuit had reheard *en banc* the case that had purportedly changed the law. *See United States v. Tafoya-Mendoza*, 232 F. App'x 675 (9th Cir.

---

[1] The defendant cites *United States v. Ibarra*, 502 U.S. 1, 5 (1991), for the proposition that the Court can reconsider prior rulings thereby providing it "the opportunity to correct [its] own alleged errors." ECF No. 42 at 1. However, this case is not applicable as it deals with *timely* motions to reconsider. *Ibarra*, 502 U.S. at 5. Over 266 days have passed since the verdict in this case and there has been no change in the law governing Counts Two and Three, as discussed in Part D.

[2] *See People v. Dobson*, 25 N.Y.S.3d 313, 315 (N.Y. App. Div. 2016) ("A Trial Judge who has rendered a guilty verdict after a nonjury trial has neither inherent power nor statutory authority to reconsider his [or her] factual determination. Although he [or she] may correct clerical or ministerial errors, he [or she] is without authority to reassess the facts and change a guilty verdict to not guilty." (quotations omitted)); *State v. Williams*, 891 So. 2d 26, 30 (La. Ct. App. 2004) ("We conclude that filing a motion for post verdict judgment of acquittal in a bench trial was procedurally improper.")

2007), *as amended on denial of reh'g and reh'g en banc* (Aug. 17, 2007). However, the Ninth Circuit did reverse the district court's dismissal of the indictment and remanded for further proceedings. *Id.* In light of this appellate history, *Mendoza* lends scant support for the notion that district courts have authority to revisit their own guilty verdicts and dismiss the underlying charges.

In *DaSilva*, Judge Nichols chose to reconsider a previous conviction in another January 6 case, after he had subsequently determined a new reading of the *mens rea* requirement in 18 U.S.C. § 1752(a)(1) and (2). The defendant, Matthew DaSilva, was convicted following a bench trial of various offenses, including three violations involving 18 U.S.C. § 1752. *DaSilva*, 2024 WL 519909 at *1. In a later case, *United States v. Elizalde*, 23-cr-170 (CJN), 2023 WL 8354932 (D.D.C. Dec. 1, 2023), Judge Nichols concluded that a conviction under 18 U.S.C. § 1752 required proof of an additional element that had not been included in the legal instructions in *DaSilva*.[3] He therefore reconsidered his findings of guilt as to Section 1752 offenses in *DaSilva*. 2024 WL 519909 at *7.

To justify this reconsideration, Judge Nichols held that a court's authority to reconsider interlocutory orders "logically extends to findings of guilty in bench trials," because findings of guilt do not divest the court of jurisdiction and permit appeal. *Id.* at *3–4. But a finding of guilt in

---

[3] Specifically, Judge Nichols concluded that conviction under Section 1752 required proof, beyond a reasonable doubt, that the defendant "knew that a Secret Service protectee would be present at the Capitol." *DaSilva*, 2024 WL 519909 at *6. The government, and many courts within this district, disagree with Judge Nichols and do not require this specific knowledge of a Secret Service protectee's presence. *See United States v. Carnell et al.,* 23-cr-139 (BAH) (Memorandum Opinion, Feb. 15, 2024, ECF No. 98 at 10-12); *United States v. Easterday*, 22-cr-404 (JEB), 2024 WL 1513527, at *10 (D.D.C. Apr. 8, 2024); *United States v. Warnagiris*, 21-cr-382 (PLF), ECF No. 128 at 4–5 (D.D.C. Mar. 28, 2024); *United States v. Chambers*, 23-cr-300 (DLF) (D.D.C. Mar. 14, 2024); *United States v. Kenyon*, No. 23-cr-101 (ABJ), (Mar. 12, 2024); *United States v. Ibrahim*, No. 21-cr-496 (TJK) (Apr. 16, 2024); *United States v. Smith*, No. 23-cr-71 (RDM), Trial Tr. at 82-97 (May 10, 2024); *United States v. Nester*, 22-cr-183 (TSC) (D.D.C. Mar. 5, 2024); Trial Tr. at 1199–1200; Mem. Court's Responses to Jury Questions at 4, *United States v. Rhine*, No. 21-cr-687 (RC), ECF No. 104 (D.D.C. Apr. 24, 2023); Trial Tr. at 330–32, *United States v. Griffin*, No. 21-cr-92 (TNM), ECF No. 106 (D.D.C. Mar. 22, 2022). The D.C. Circuit is expected to decide this issue in *United States v. Griffin*, No. 22-3042 (oral argument held Dec. 4, 2023).

a criminal case is not ordinary subject to an interlocutory appeal. To the contrary, the Federal Rules of Criminal Procedure set out in detail the narrow circumstances in which a guilty verdict can be revisited. *See, e.g.*, Fed. R. Crim. P. 29, 33. And the D.C. Circuit has repeatedly emphasized the finality of jury verdicts. *Cf. United States v. Campbell*, 684 F.2d 141, 151–52 (D.C. Cir. 1982) (holding that alleged juror misconduct did not justify overturning verdict and emphasizing "the finality of the verdict"); *United States v. Williams-Davis*, 90 F.3d 490, 505 (D.C. Cir. 1996) (emphasizing the importance of "[p]reserving the finality of jury verdicts" to denying defendant a hearing on post-trial juror allegations of pre-deliberation discussions).

It is unclear why the Court should approach the finality of its verdict any differently than a verdict rendered by a jury. *See People v. Maharaj*, 679 N.E.2d 631, 657 (N.Y. 1997) ("Simply because the court was acting as both fact finder and Judge of the law does not allow for a result different from that dictated when a court presiding over a jury trial [made a legal error] . . . . After formal rendition of a verdict at a bench trial, a trial court lacks authority to reweigh the factual evidence and reconsider the verdict.") (citations omitted). If a jury were to return a guilty verdict and, later, some other juries returned different verdicts on allegedly similar facts and under similar legal instructions, the court would not recall the jury, reopen the verdict, and ask the jury to deliberate again. Indeed, even in the context of Rule 29, despite the fact Rule 29 only refers to juries, courts have held that the same standard applies to bench trials and judges too. *See United States v. Jabr*, 18-cr-105-PLF, 2019 WL 13110682, at *4 (D.D.C. May 16, 2019) (collecting cases).

The *DaSilva* opinion attempts to square this circle largely through a technical interpretation of the Federal Rules of Criminal Procedure distinguishing between juries and judges as factfinder for purposes of Rule 29. This interpretation is almost entirely underpinned by *DaSilva*'s statement

that "[j]uries return guilty 'verdicts,' judges render 'findings' of guilty." 2024 WL 519909 at *5. But courts regularly use the terms "verdict of guilty" and "finding of guilt" interchangeably, regardless of whether the factfinder is a jury or judge—even in some of the cases *DaSilva* cites. *See, e.g.*, *Ex Parte Lange*, 85 U.S. 163, 201–02 (1873) (referring to jury's "finding" of guilt); *Smith v. Massachusetts*, 543 U.S. 462 (2005) (discussing impact of judge's "directed verdict" on double jeopardy considerations).

Thus, as a matter of law, the procedural framing – a Motion to Reconsider – is inadequate.[4] If courts could reconsider such findings at any time, the time limits imposed by Rule 29 and Rule 33 would lose their meaning in its entirety.

### b. The Proper Remedy is Vacatur

Putting defendant's erroneous reliance on reconsideration aside, the government agrees that the instruction used by the Court at sentencing no longer implement the controlling reading of the statute, in light of *Fischer*. The fact that the Court considered instructions that *later* turned out to be incorrect may amount to an instructional, or trial, error, necessitating that the Court vacate the defendant's convictions on that count. *United States v. Reynoso*, 38 F.4th 1083, 1090–91 (D.C. Cir. 2022) ("[A] defendant cannot make out a sufficiency challenge as to offense elements that the government had no requirement to prove at trial under then-prevailing law."). On a procedural record like the one in this case, the D.C. Circuit held that "a sufficiency claim is a non sequitur." *Id*. at 1091. "If the [finder-of-fact], consistent with then-prevailing law, is never asked to find the existence of something later established to be an offense element, there is no freestanding insufficiency-of-the-evidence claim as to that element." *Id.* at 1090. Since the Court drew the

---

[4] If the Court does reconsider its verdict, it should find Loganbill guilty under the *Fischer* standard, as discussed in Part C.

elements and fact-finding for Count One from then-prevailing law, it was not asked to find the existence of the additional fact required by the Supreme Court in *Fischer*.

Given the current pre-sentencing procedural posture, the defendant's apparent trial-error claim is best understood as an (untimely) Rule 33 Motion. Fed. R. Crim. Pro. 33(a) (the Court may grant "a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment."); *United States v. Kirsch*, 151 F. Supp. 3d 311, 315 (W.D.N.Y. 2015) (noting that a significant intervening change in the law may constitute a valid basis to extend time under Rule 45(b)(1)(B)). And, as in any Rule 33 motion, the proper remedy, if any, is a new trial.

In addition to being procedurally proper, vacatur – as opposed to a judgment of acquittal – is also most consistent with *Fischer*'s substantive holding. As the Court knows, *Fischer* did not reject the application of Section 1512(c)(2) to all January 6 prosecutions. Rather, the Supreme Court explained that the government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in the proceeding. Although the Court did not consider whether the defendant "impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in the proceeding – such as witness testimony or intangible information – or attempted to do so," *Id*. at 2186, the government should not be deprived of its ability to make that showing in a future retrial, if it so chooses. And the government is prepared to seek such a retrial, considering the facts of this case.

The procedural pathway is vacatur. When reconsidering a finding of guilt in light of a potential legal error, the district court sits in a similar position to an appellate court considering the same question. *Bravo-Fernandez v. United States*, 580 U.S. 5, 20 (2016). The ordinary remedy

is vacatur, not reversal without an opportunity for retrial. *Id.*; *United States v. Argueta-Rosales*, 819 F.3d 1149, 1151 (9th Cir. 2016) (vacating and remanding for a retrial). That should be the only remedy here.

### c. The Government can Prove Count One under the *Fischer* Elements.

After vacating the defendant's Count One convictions, the Court should set the case for retrial on this Count. As Justice Jackson suggested in her concurrence in *Fischer*, there may be January 6 cases that satisfy the new requirements. *Fischer*, 144 S. Ct. at 2194. This is one of those cases.

At the time *Fischer* was decided, approximately 259 cases of the over 1,400 cases charged in the January 6 prosecution involved the application of §1512(c)(2). Some of the 259 cases were convictions at trial, while others were convictions through pleas. Some of those are currently pending trial, whereas other defendants have served their sentences of incarceration fully. As a result of *Fischer*, the government has endeavored to review cases – particularly those cases pending appeal, pending trial, or actively serving a sentence – in a timely and responsive fashion. Of those original 259 cases, the government has, as of the date of this filing, sought to forgo application of §1512(c)(2) – either post-conviction, pending appeal, or pending trial, in over 60 cases.[5] The government continues to evaluate and/or litigate §1512(c)(2) in a variety of contexts. In this case, after a careful analysis of the *Fischer* opinion, the government contends that the defendant violated the statute and intends to proceed with the charge.

---

[5] The government's decision to forgo charges should not be read as a concession that the defendant's conduct does not meet the test as articulated by *Fischer*. Rather, we are evaluating the facts on a case-by-case basis, including whether the defendant committed other felonies, whether the criminal penalties of other applicable crimes sufficiently serves the goals of 18 U.S.C. § 3553(a), and whether additional litigation is warranted. This process is appropriately time-consuming.

On October 17, 18, and 19, 2023, the Court held a bench trial in this case. Minute Entries October 17, 18, and 19, 2023. During the course of the trial, many government exhibits were admitted into evidence, including over 100 Facebook posts and text messages written by the defendant showing his intent on January 6, 2021. EFC No. 25. Several of these exhibits directly related to the defendant impairing "the availability or integrity of records, documents, objects, or other things, such as witness testimony or intangible information, for use in an official proceeding, or attempt[ing] to do so." *Fischer,* 144 S. Ct. 2176. For example:

- On December 20, 2020, the defendant wrote to Facebook, "This would take place Jan 6 Witnesses should be 60 feet away while Pence counts the Electoral College votes . . . Pence should open all the envelopes and then stack all the EC ballots in a pile, he should then shred all the envelopes and burn the shreds." Gov. Ex. 302.47.

- On December 30, 2020, the defendant wrote to Facebook, "CALL SENATOR JOSH HAWLEY'S OFFICE T O D A Y AND LET HIM KNOW YOU SUPPORT HIS INTENT TO BE THE FIRST REPUBLICAN SENATOR TO CHALLENGE THE ELECTORAL VOTE ON JANUARY 6." Gov. Ex. 302.49.

- On January 6, 2021, at 1:20 p.m., the defendant sent a text message, "Are you watching what's going on in the house/ elector certification." Gov. Ex. 303.

- On January 7, 2021, the defendant replies to a comment by another person on Facebook saying, "Why do you think we were trying every means possible to stop these idiots from stealing the presidency and destroying this nation." Gov. Ex. 302.65.

Evidence at trial showed Loganbill entered the Capitol, the location where the Electoral College ballots were located and where Congress and the Vice President were conducting the

official proceeding.[6] Gov Exs 101.1 and 701. Once inside, the defendant proceeded towards the Senate, where Congress would be handing objections to the Electoral College vote – attempting to obstruct Congress' certification of the Electoral College ballots. The defendant knew where he was going. The government admitted a Facebook post by the defendant on January 7 and 8, 2021, he wrote, "They didn't [let us in] at the chamber, we could have over run them, after 10-15 minutes of back and forth, we walked out" and "The only place [the police officers] wouldn't give was the hallway towards the Rep. chamber." Gov Exs 302.66 and 302.82, respectively. The "chamber" and "Rep. chamber" were where the Vice President and members of Congress would have been counting and certifying the Electoral College ballots. Gov Ex 701.

On November 16, 2023, the Court found the defendant guilty as charged in the indictment. Minute Entry November 16, 2023. In its verdict, the Court found:

> Whether as a principal or as an aider and abetter, [Loganbill's] presence afterwards inside added bulk to the mob and made it impossible for the count to take place as the building was no longer secure.
>
> The Vice President could not return to the Senate chamber, none of the members of Congress could return to either chamber until each and every one of the trespassers had been removed from the building. Defendant's entry into and ongoing unlawful presence in the building as a member of the mob -- none of whom had passed through ordinary security screens -- made it impossible for the certification to proceed. So this element is satisfied as to the defendant personally and as an aider and abetter.

ECF No. 40 at 5. The Court found the defendant "knew exactly where he was going and what was going on. He understood the Vice President's role and the members' roles" and that the defendant

---

[6] According to the testimony of Captain Jessica Baboulis' testimony, "[t]he official proceeding had suspended due to the presence of rioters on Capitol Grounds and inside the Capitol. ECF No. 31 at 23. As the Court said in its verdict, "It doesn't matter to this count if he entered the building after the official proceeding had been suspended and Pence had been evacuated." ECF No. 40 at 5. Loganbill attempted to and did obstruct the Electoral College vote, including the counting of ballots, the presence of members of Congress, and the presence of the Vice President.

was "writing about what Pence should do on January 6 with the Electoral College vote. He was very aware of what was happening." ECF No. 40 at 7-8. The Court continued, "He knew where he was going, he knew what was happening there. And he knew where he was when he got inside, too." ECF No. 40 at 8. The Court found "[t]he evidence showing that [the defendant] knowingly went in with the intent to impede an official function was established by the same evidence that shows beyond a reasonable doubt that he had the intent to obstruct the official proceeding, the certification, which is an official governmental function." ECF No. 40 at 23.

From this evidence, including the defendant's express statement related to the destruction of the electoral ballots, the Court would be able to find, beyond a reasonable doubt, that the defendant acted to obstruct the certification of the electoral vote, and specifically, that he intended to, and attempted to, impair the integrity or availability of the votes (which are documents, records, or other things within the meaning of *Fischer*) under consideration by the Joint Session of Congress on January 6, 2021.

Of course, with any retrial, both parties would be permitted to introduce new evidence, or start the record over anew. Indeed, the government would likely introduce additional evidence related to the ballots and staffers attempts to remove the ballots from the chambers when the riot started. The parties, however, have not yet discussed the best way to proceed. Additionally, the government is currently evaluating the interplay between 18 U.S.C. § 1512(c)(1) and (c)(2), and whether other charges are warranted under *Fischer* to encompass the defendant's obstructive conduct regarding the certification.

### d. The Court's Verdict on Counts Two and Three Should Not Be Disturbed

The defendant also seeks to have the Court reconsider its findings of guilt on Counts Two and Three. However, there has been no change in the law governing Counts Two and Three, and

thus, no legal error with respect to the Court's verdict. While the Circuit has "taken up the issue of whether under 18 U.S.C. 1752(a), the law requires that a defendant…have knowledge of the existence of one of the facts listed in the definition of 'restricted building or grounds,'" (ECF No. 42 at 4), the Court's instructions properly reflect the current state of the law.[7] The Court's verdict on these counts should thus remain undisturbed. As discussed above and below, the defendant's request is both procedurally and substantively barred.

Even if the Court were to agree with the defendant's preferred reading of § 1752(a), requiring the government to prove that the defendant knew "a 'person protected by the Secret Service' was present at the time he entered or remained" at the Capitol, (ECF No. 42 at 4), the government already did so at trial. Specifically, the government proved at trial, beyond a reasonable doubt, that the defendant knew Vice President Mike Pence – a Secret Service protectee – was present at the U.S. Capitol – a restricted area – when the defendant knowingly entered and remained there. And the Court found: "The verdict [is] supported by his own statements and all the evidence I just summarized regarding his knowledge that he was not supposed to go past the barriers or inside, and the testimony of Agent Baboulis that the building was restricted due to the Vice President's presence." ECF No. 40 at 22.

While the Court also noted Count Two was "largely conceded", *Id.*, the Court also elsewhere cited proof of the defendant's knowledge of Pence's presence at the Capitol on January 6, 2021: "So why was he headed to the Capitol? He knew exactly where he was going and what was going on. He understood the Vice President's role and the members' roles." *Id.* at 7. The government already highlighted in Part C the defendant's statements detailing Vice President

---

[7] Since the verdict in this case, this Court has ruled that the government does not need to prove that a defendant knew of Vice President Pence's presence. *United States v. Jay Matthew Kenyon*, 23-cr-101 (ABJ), Mar. 12, 2024 Tr. at 4.

Pence's job with respect to the Electoral College votes on January 6. Referring to this, the Court found: "the defendant is writing about what Pence should do on January 6 with the Electoral College vote. He was very aware of what was happening." *Id*. This is sufficient to prove the defendant's knowledge on Counts Two and Three under any articulation of 18 U.S.C. § 1752(a).

### III.   Conclusion

For the foregoing reasons, the government asks that the Court deny the defendant's motion to reconsider Counts One, Two, and Three. With respect to Count One, the Court should set the matter for retrial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:   /s/_____
BRIAN BRADY
D.C. Bar Number 1674360
Trial Attorney
U.S. Department of Justice, Crim. Div.
Detailed to the D.C. U.S. Attorney's Office
601 D St. NW
Washington, D.C. 20530
Brian.Brady@usdoj.gov
(202) 834-1916

*/s/ Alexander Diamond*
ALEXANDER M. DIAMOND
NY Bar No. 5684634
Assistant United States Attorney
District of Columbia
601 D St. NW
Washington, DC 20530
(202) 506-0427
Alexander.Diamond@usdoj.gov