UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO. 23-cr-289 (ABJ) |
| | : | |
| MATT LOGANBILL, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S SURREPLY

Consistent with the Court's September 17, 2024 Minute Order, the government provides this surreply to explain the sufficiency of the government's evidence under the post-*Fischer* standard and address the defendant's new double-jeopardy argument without elaborating upon the holding of previously cited cases. The remedy available to the defendant is to vacate his conviction and set the case for retrial, as the D.C. Circuit made clear most recently in *United States v. Benton*, 98 F.4th 1119, 1132 (D.C. Cir. 2024).

**I.   The Government's evidence at retrial would prove a violation 18 U.S.C. § 1512(c)(2) as articulated by the Supreme Court in *United States v. Fischer*.**

The defendant argues that the government would not be able to prove a violation of § 1512(c)(2) in this case under the standard stated in *Fischer v. United States*, 144 S. Ct. 2176 (2024). *See* ECF No. 46 at 10-12. This is properly a topic for a Rule 29 motion at retrial, not a reply brief following a conviction under a different legal standard. However, the government would be able to prove at retrial on Count One that the defendant attempted to impair or render unavailable records, documents, objects, or other things used in the electoral college certification, or that he aided and abetted those that did, in violation of 18 U.S.C. §§ 1512(c) and 2.

The Court asks, why, in the government's view, evidence that the ballots were physically present in either chamber of Congress – even coupled with a December 20, 2020 Facebook post by the defendant opining that "Pence should open all the envelopes and then stack all the EC

ballots in a pile, he should then shred all the envelopes and burn the shreds" – would suffice to establish that this defendant "impaired the availability or integrity for use in an official proceeding of records, documents, objects, or... other things used in the proceeding, or attempted to do so" in accordance with *Fischer*. *U.S. v Loganbill*, 23-cr-289-ABJ, Minute Order (Sep. 17, 2024). Respectfully, the Court's description of the evidence omits that the defendant took a substantial step toward meeting his goal. The evidence will show that the defendant not only specifically intended to impair the integrity of the electoral ballots – a document, record, or other thing used in the certification – but that he also attempted to bring about that result when he invaded the Capitol, a substantial step toward accomplishing his goal. The government need not prove that the defendant actually impaired the ballots by breaching the Capitol, just that he attempted to do so.

Contrary to the defendant's claim, the government would not rely exclusively on his "awareness of and intent to halt the certification of the vote" in arguing his "attempt to impair evidence related to it." *See* ECF No. 46 at 11. The defendant's December 20, 2020 Facebook post opining that "Pence should open all the envelopes and then stack all the EC ballots in a pile, he should then shred all the envelopes and burn the shreds…", Gov. Ex. 302.47, does more than express mere *awareness* of the proceeding that was taking place in Congress at the time he forced entry into the building, it expresses a clear *desire* as to see electoral college ballots – the tangible objects at the center of the proceeding – destroyed by the Vice President.[1] That specific intent mirrors the elements of § 1512(c)(2) as articulated by the Supreme Court in *Fischer*.

And this specific intent cannot be dismissed as mere posturing on social media. The defendant frequently made the same argument at trial to undermine the thrust of his bellicose

---

[1] To be clear, this is but one of many statements, albeit less specific, concerning the defendant's desire to stop the certification proceeding. *See, e.g.,* Gov. Exs. 302.49, 302.65. But those statements exist in the context of this express desire to see the ballots destroyed.

2

rhetoric on Facebook. But as the Court acknowledged, "he made his intentions very clear in his own communications and his own conduct." ECF No. 40 at 21. He did not merely threaten, "I will not go quietly into the night," Gov. Ex. 302.21, "war is coming," Gov. Ex. 302.28, and "they haven't seen a riot until our side gets started," Gov. Ex. 302.46, he showed up at the United States Capitol in military gear (which he did not use to protect himself against antifa, but rather, the police), and advanced past police deterrents until external forces – a wall of police in full riot gear – finally stopped him just down the hall from the Senate Chamber. The defendant possessed the specific intent to commit the crime and took a substantial step towards completing it. It is but a small leap to imagine that, if he was not stopped by the police, he and the mob would have entered the Senate Chamber and tried to impair the availability or integrity of the documents therein.

The defendant cites the *Fischer* court's football analogy as instructive here, likening the defendant's conduct to the insult hurling that the Supreme Court said would not meet the definition for otherwise harming another player. ECF No. 46 at 11-12. But what of the player who, having expressed a clear desire to physically attack another player, charges at that player, only to be (fortunately) intercepted by the referee just before contact is made? This represents a classic attempt theory of liability, particularly when compared to the defendant's actions on January 6, 2021.

Moreover, the government would not have to prove that the defendant would have himself put hands on the ballots or other documents to be used in the certification proceeding. As the Court already acknowledged in finding that the defendant did not have to act violently in order to impede the proceeding by means of participating in a violent mob, the defendant's acts of donning military gear and joining other individuals he directly observed threatening and engaging in violence aided and abetted them in achieving their joint goals. *See* ECF No. 40 at 5 ("Whether as a principal or

as an aider and abettor, his presence [] inside added bulk to the mob and made it impossible for the count to take place."). And the defendant understood before, during, and after the riot that he was not acting alone; this was always a joint effort. *See* ECF No. 40 at 10 ("Was he not part of any organized group? … Government's Exhibit 302.57, he comments on Facebook on January 5th: there's about a thousand military, ex-military in our group. … And in his own narrative … we were a small group of businessmen, military, retired military, law enforcement, private military contractors, and MPs from Missouri, Kansas, and Texas, loosely affiliated with a larger group of the same."). At retrial, the government would be able to show that members of that mob *did* ultimately reach sensitive areas and that the natural, probable, and *actual* result caused the electoral ballots to become unavailable for hours – entirely consistent with the defendant's intent to ensure that those ballots would not be accepted that day.[2] The government would thus also show that the defendant possessed a specific intent to obstruct the proceeding by way of impairing the integrity or availability of documents, records, or other things to be used in the proceeding, and he aided and abetted others in completing the crime.

## II.     The Double Jeopardy Clause does not bar retrial.

Although the defendant's original motion did not raise the issue, *see* ECF No. 42, he now contends that vacatur followed by retrial would run afoul of the Double Jeopardy Clause. ECF No. 46 at 10. This argument is incorrect; it proceeds from a faulty premise and is directly precluded by precedent binding on this Court. *See Benton*, 98 F.4th at 1132.

Double jeopardy does not bar retrial where, as here, a legal error requires vacating a conviction. In *United States v. Benton*, the D.C. Circuit made clear that "*Reynoso* requires that

---

[2] For example, and as the Court noted, "Government's Exhibit 302.76, after January 6th he calls the guy who sat at Nancy Pelosi's desk with his feet up a hero." ECF No. 40 at 20.

[the court] reject [a] sufficiency-of-the-evidence challenge" when "[t]he law of our circuit at the time of trial did not require the government to prove" the disputed element. 98 F.4th at 1132. Regardless the defendant's reading of *Fischer* as "interpret[ing]"—versus "chang[ing]"—the elements of § 1512(c)(2), *see* ECF No. 46 at 8, there can be no question that the government was under no obligation in the defendant's trial to prove a violation of § 1512(c)(2) under the standard later described by the Supreme Court in *Fischer*.[3] At the time of Defendants' first trial, "then-prevailing law"—i.e., the D.C. Circuit's decision in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023)—provided that the elements of 18 U.S.C. § 1512(c)(2) applied by the Court in this case did not include a requirement that the defendant's obstructive conduct had to impair the availability of a document, record, or other object. *See United States v. Brock*, 94 F.4th 39, 47 (D.C. Cir. 2024) (declining to reach sufficiency challenge, citing *Reynoso*, 38 F.4th 1083, because the D.C. Circuit's decision in *Fischer* was prevailing law at the time of the appeal); *see also* ECF No. 13 (denying motions to dismiss Count One based on D.C. Circuit's ruling in *Fischer*). A sufficiency claim is a non-sequitur.[4]

The reversible error in the defendant's trial was an incorrect application of the elements of the offense based on then-existing precedent, not insufficiency of the evidence. And because,

---

[3] The *Benton* decision elaborated upon *Reynoso*. 98 F.4th at 1132 (citing *United States v. Reynoso,* 38 F.4th 1083, 1091 (D.C. Cir. 2022)). The legal landscape in *Reynoso* was not as different from this case as the defendant suggests – at the time of Reynoso's trial, the Supreme Court had already granted cert. in *Rehaif*, where it would later clarify the elements of § 922(g). *See Rehaif v. United States*, 588, U.S. 225 (2019). While the defendant inappropriately seeks to limit *Reynoso,* consistent with the Court's order, the government will not discuss *Reynoso*, which it previously cited, further in this brief.

[4] The defendant's admission that "this Court ruled…that there is no requirement under § 1752(a) that the government prove that the defendant had knowledge of a Secret Service protectee's presence within a restricted building or grounds" similarly dooms his arguments as to Counts Two and Three; moreover, there is no contrary circuit law at this time requiring reversal. *See* ECF No. 46 at 10, n.3.

unlike a sufficiency challenge, vacatur for the failure to correctly apply a statute does not result in an acquittal, the Double Jeopardy Clause does not bar retrial. *See Reynoso*, 38 F.4th at 1091; *Bravo-Fernandez*, 580 U.S. at 9.[5]

### Conclusion

The Court should deny the defendant's motion, vacate the defendant's conviction on Count One, and set the case for retrial on that count.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:    /s/ Alexander Diamond

ALEXANDER M. DIAMOND
NY Bar No. 5684634
Assistant United States Attorney
District of Columbia
601 D St. NW
Washington, DC 20530
(202) 506-0427
Alexander.Diamond@usdoj.gov

---

[5] As the Ninth Circuit explained in *U.S. v. Weems*, whose reasoning undergirds *Reynoso* and *Benton*, "[t]his [] is analogous to the situation presented when a reviewing court finds that evidence supporting a conviction has been erroneously admitted at trial, and the remaining evidence is insufficient to support a conviction. The Supreme Court has held that remand is appropriate in these situations… [I]t is presumed that the government would have attempted to offer other evidence had the challenged evidence been properly excluded in the trial court… Retrial, under these circumstances, is not the sort of governmental oppression at which the double jeopardy clause is aimed…" 49 F.3d 528, 531 (9th Cir. 1995) (quoting *Lockhart v. Nelson*, 488 U.S. 33, 42 (1988)).